IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| JOSE GARCIA, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 11-4073 |
| | : | |
| PENNSYLVANIA STATE POLICE, | : | |
| TROOPER KEVIN P. HIBSON, Individually and in | : | |
| His Official Capacity as a Pennsylvania State | : | |
| Trooper, Dublin Station and | : | |
| TROOPER WILLIAM MCDERMOTT, | : | |
| Individually and in His Official Capacity as a | : | |
| Pennsylvania State Trooper, Dublin Station, | : | |
| Defendants. | : | |
| | : | |

Henry S. Perkin, M.J.                                                                                      October 14th, 2011

**MEMORANDUM**

Presently before the Court is the Partial Motion to Dismiss the Complaint filed by the Defendants on July 29, 2011.  See Document No. 3.  For the following reasons, the Partial Motion to Dismiss will be granted in part and denied in part.

I.    **FACTS.**[1]

On July 6, 2009, Plaintiff Jose Garcia ("Mr. Garcia"), along with several friends and relatives, traveled from his home in Palmerton, Pennsylvania, to Quakertown, Pennsylvania to play in a pick-up soccer game.  See Compl., ¶ 10.  At approximately 8:00 p.m., Mr. Garcia's cousin received a telephone call that his friend Richard had been stopped nearby by the police and requested that someone come translate for him[2] and pick up his vehicle because he did not

---

[1] The facts are gleaned from the Complaint.  See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004).  For purposes of this motion, they are presented in the light most favorable to Mr. Garcia as the non-moving party, and are accepted as true with all reasonable inferences drawn in his favor.

[2] Richard did not speak English.  See Compl., ¶ 11.

have his driver's license with him.[3]  Id. at ¶ 11.  Mr. Garcia agreed and a friend drove him to Richard's location.  Id. at ¶ 12. Mr. Garcia did not observe any police officers present at that time, and Richard told him that the police officers told Richard to wait by his vehicle until they returned.  Id. at ¶¶ 14, 15.  Mr. Garcia stood next to Richard and Richard's vehicle and Trooper Kevin P. Hibson ("Trooper Hibson") drove up, stopped nearby, asked Mr. Garcia to identify himself and informed Mr. Garcia that he was going to arrest him.  Id. at ¶ 16.  Mr. Garcia asked the reason for his arrest and told Trooper Hibson he did not know what was happening.  Id. at ¶¶ 16, 17.  Within seconds, Trooper Hibson and Trooper William McDermott ("Trooper McDermott") grabbed Mr. Garcia, told him to put his hands behind his back, and pushed him against the side of Richard's vehicle.  Id. at ¶ 18.

      Mr. Garcia claims that Trooper Hibson, on Mr. Garcia's left, was gentle with him, but Trooper McDermott, on his right, was unnecessarily physical, aggressive and rough and slammed Mr. Garcia's head into the back window of the vehicle, chipping and breaking two of his teeth and causing immediate lacerations and bleeding in Mr. Garcia's mouth and on his lips.  Id. at ¶ 19.  Trooper McDermott twisted Mr. Garcia's right arm behind him, causing Mr. Garcia extreme pain and causing him to scream.  Id. at ¶ 20.  Trooper Hibson placed handcuffs on Mr. Garcia and tightened them, causing Mr. Garcia pain.  Id. at ¶ 21.  Mr. Garcia complained and was told by Trooper Hibson that the handcuffs were brand new.  Id.  Soon several more police officers and/or state troopers arrived, Mr. Garcia asked to be taken to the hospital, and his request was refused.  Id. at ¶ 22. Mr. Garcia claims that neither Trooper McDermott nor Trooper Hibson informed Mr. Garcia that he was being arrested at any point during this interaction.  Id. at ¶ 23.

---

      [3]      In 2000, Mr. Garcia moved to the United States from El Salvador.  See Compl., ¶ 8.

Mr. Garcia informed Trooper McDermott and Trooper Hibson that if they were going to arrest him, they should do so but that he would be contacting his attorney. Id. at ¶ 24. Eventually, the handcuffs were removed from Mr. Garcia at the scene and his request for transport to the hospital was again refused. Id. at ¶ 25. While all of the police officers and/or state troopers were leaving the scene, Mr. Garcia called his sister to pick him up and take him to the hospital. Id. at ¶ 26. When she arrived, Mr. Garcia was experiencing tremendous pain and asked her to call an ambulance. Id. at ¶ 27. Mr. Garcia was taken by ambulance to the Emergency Room at St. Luke's Hospital in Quakertown where he was treated. Id. at ¶ 28.

Mr. Garcia was charged with Resisting Arrest and Disorderly Conduct under criminal complaint number 0305-09 in Bucks County, Pennsylvania. Id. at ¶ 29. Mr. Garcia applied for and was granted Alternative Rehabilitative Disposition ("ARD") for each crime, completed the ARD program and obtained an order from the Bucks County Court of Common Pleas expunging his criminal record. Id. at ¶ 30.

## II.     PROCEDURAL BACKGROUND.

On June 22, 2011, Mr. Garcia filed the instant case against the Pennsylvania State Police ("PSP"), Trooper Hibson and Trooper McDermott pursuant to 42 U.S.C. section 1983,[4]

---

[4]     42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C.A. § 1983.

claiming that the Defendants used excessive force against him (Count I), unlawfully detained him (Count II) and maliciously prosecuted him (Count III) in violation of his Fourth Amendment rights.  See Document No. 1.  Mr. Garcia also asserts an assault and battery claim pursuant to Pennsylvania law against Troopers Hibson and McDermott (Count IV).  Id.  Defendants filed the instant Motion on July 29, 2011.  See Document No. 3.  Mr. Garcia filed his Response to the Motion on August 23, 2011.  See Document No. 5.  On September 2, 2011, the Honorable James Knoll Gardner referred this case to the undersigned for a settlement conference.  See Document No. 6.  The parties consented to a jury trial before the undersigned pursuant to 28 U.S.C. § 636 on September 7, 2011.  See Document No. 8.  Judge Gardner approved the consent and transferred the case to my docket on September 16, 2011.  See Document No. 9.

## II.     STANDARD OF REVIEW.

A motion to dismiss under Rule 12 (b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The motion to dismiss standard has been the subject of much examination, culminating with the United States Supreme Court opinion Ashcroft v. Iqbal, 129 S.Ct. 1927 (2009).  Following Iqbal, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice" to defeat a Rule 12 (b)(6) motion to dismiss.  Id. at 1949; see also Bell Atlantic v. Twombly, 550 U.S. 544 (2007).  The Third Circuit Court of Appeals applied the principles of Iqbal in Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), and articulated a two-part analysis that district courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12 (b)(6) motion to dismiss.

First, the factual and legal elements of a claim should be separated, meaning "a

District Court must accept all of the complaint's well-pleaded facts as true, but may disregard legal conclusions." Id. at 210-11.  Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211.  A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950; Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010).  The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004).  A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

### III. DISCUSSION.

#### A. Whether the Eleventh Amendment Bars the Section 1983 Claims Against Defendants in Their Official Capacities.

Defendants first move to dismiss the civil rights claims against them in Counts I, II and III pursuant to the Eleventh Amendment. Mr. Garcia concedes that his claims pursuant to 42 U.S.C. § 1983 against the PSP, Trooper Hibson and Trooper McDermott in their Official Capacities are barred by the Eleventh Amendment. Therefore, those claims pursuant to 42 U.S.C. § 1983 asserted against the PSP and Troopers Hibson and McDermott in their Official Capacities in Counts I, II and III of the Complaint are dismissed with prejudice, and the PSP is dismissed from this case. However, the claims in Counts I, II, and III of the Complaint against Troopers Hibson and McDermott in their Individual Capacities remain in the case.

#### B. Whether Mr. Garcia's Section 1983 Claims for Malicious Prosecution and Unlawful Detention Fail As A Matter of Law.

In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court held that a § 1983 claim could not be maintained "on the basis of events leading to a conviction which has not been reversed or impaired by other official proceedings" when a favorable judgment for the plaintiff in a case would imply that the conviction is invalid. Turosik v. Hougue, No. CIV.A. 08-1248, 2011 WL 1044648, at *8 (W.D. Pa. Mar. 18, 2011)(citing Nelson v. Jashurek, 109 F.3d 142, 144 (3d Cir. 1997)(citing Heck, 512 U.S. at 485-87)). In order to avoid the Heck doctrine, the prior criminal case must have concluded in a manner indicating innocence of the accused, i.e., a favorable termination. Id. (citing Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009) (citing Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002)). Moreover, an underlying criminal conviction must have been reversed or otherwise impaired and if a finding for a § 1983 plaintiff

would not implicate the validity of a related criminal conviction, Heck will not bar the § 1983 action.  Id. (citing Nelson, 109 F.3d at 144, 145-46; Heck, 512 U.S. at 486-87).  The Third Circuit requires this Court to first examine § 1983 claims according to Heck and determine whether the success of the claim would invalidate a conviction or sentence.  Id. (citing Flood v. Schaefer, 240 F. App'x 474, 476 (3d Cir. 2007)(citing Gibson v. Superintendent, 411 F.3d 427, 447-49 (3d Cir. 2005)) and Gilles v. Davis, 427 F.3d 197, 209 (3d Cir. 2005)).

In order to succeed on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007); DiBella v. Borough of Beechwood, 407 F.3d 599, 601 (3d Cir. 2005)(citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).  In connection with the July 6, 2009 incident, Mr. Garcia was charged with resisting arrest[5] and entered into an ARD program.  In Gilles, the Third Circuit concluded that Heck applies to claims brought by a litigant whose successful completion of an ARD program and/or guilty plea did not constitute a "favorable termination" for purposes of

---

[5]  Resisting arrest or other law enforcement is defined as:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa. C.S.A. § 5104.

bringing a subsequent § 1983 suit for malicious prosecution.  Gilles, 427 F.3d at 209 n.8, 211-12.  In order to prove his § 1983 malicious prosecution claim, Mr. Garcia would be required to attack the validity of his ARD sentence because he would be required to declare his innocence with regard to criminal charges that did not terminate in his favor.  Thus, Defendants' motion to dismiss must be granted as to Mr. Garcia's § 1983 malicious prosecution claim against Troopers Hibson and McDermott in their Individual Capacities and Count III of the Complaint will be dismissed in its entirety.

Mr. Garcia also brings a section 1983 action based on unlawful detention at Count II of the Complaint.  To succeed on a false arrest or an unlawful detention claim under 42 U.S.C. § 1983, a plaintiff must establish that: (1) he was detained; and (2) the detention was unlawful. Marable v. West Pottsgrove Tsp., 176 F. App'x 275, 280 (3d Cir. 2006)(citing Valento v. Sheeler, 765 F.Supp. 227, 232 (E.D. Pa. 1991) and Martell v. Chisholm, 384 F.Supp. 1224, 1226 (W.D. Pa. 1974)). Mr. Garcia entered into the ARD program after being charged with resisting arrest pursuant to 18 Pa. C.S.A. § 5104 and disorderly conduct[6] pursuant to 18 Pa. C.S.A. § 5503.

---

[6]  Disorderly conduct is defined as:

(a) Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

    (1) engages in fighting or threatening, or in violent or tumultuous behavior;
    (2) makes unreasonable noise;
    (3) uses obscene language, or makes an obscene gesture; or
    (4) creates a hazardous or physically offensive condition by any act which serves
    no legitimate purpose of the actor.

(b) Grading.--An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

(c) Definition.--As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or

With respect to Mr. Garcia's § 1983 unlawful detention claim, a conviction under 18 Pa. C.S.A. § 5104 requires that the arrest be lawful.  Marable, 176 F. App'x at 280 (citing In re Barry W., 621 A.2d 669, 673 (Pa. Super. 1993)).  If the arrest is considered lawful, then the detention pursuant to that arrest would, in turn, also be lawful.  In Heck, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Heck, 512 U.S. at 486-87.  An award of damages in the § 1983 false imprisonment claim would require a finding that Mr. Garcia had been unlawfully detained, which would be at odds with the favorable termination rule of Heck and Gilles.  Thus, Defendant's motion to dismiss Mr. Garcia's § 1983 claim as to unlawful detention must also be granted as to Troopers Hibson and McDermott in their Individual Capacities and Count II of the Complaint is also dismissed.

      **C.**    **Whether Sovereign Immunity Bars Mr. Garcia's Assault and Battery Claims Against Troopers Hibson and McDermott.**

Troopers Hibson and McDermott next move to dismiss Mr. Garcia's assault and battery claims as barred by sovereign immunity.  See 42 Pa. C.S.A. § 8522.  Sovereign immunity bars tort claims against the Commonwealth, its officials, and employees when acting within the scope of their duties.  1 Pa. C.S.A. § 2310.  The Pennsylvania General Assembly delineated nine exceptions to the sovereign immunity bar which are to be "strictly construed and narrowly

---

amusement, any neighborhood, or any premises which are open to the public.

18 Pa. C.S.A. § 5503.

tailored."[7] Brown v. Blaine, 833 A.2d 1166, 1173 (Pa. Cmwlth. 2003). Because neither assault nor battery (Count IV) falls within one of these nine exceptions, Troopers Hibson and McDermott argue that both claims are barred by sovereign immunity. To counter this conclusion, Mr. Garcia argues that the Troopers' actions were allegedly conducted outside the scope of their employment and they are not entitled to sovereign immunity.

Mr. Garcia contends that the Troopers were acting outside the scope of their employment when they used excessive force against hiM and are not entitled to sovereign immunity. At this stage, I agree. The sovereign immunity provided to Commonwealth employees under § 2310 only extends to those employees "acting within the scope of their duties." 1 Pa. C.S.A. § 2310. "Conduct of an employee is within the scope of employment only if: (1) it is of a kind that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is calculated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, it is not unexpected by the employer." Revak v. Lieberum, No. CIV.A. 08-691, 2008 WL 4858291, at *4 (W.D. Pa.. Nov. 10, 2008)(citing Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000) (citing Restatement (Second) Agency § 228)). Mr. Garcia alleges that the force used by the Defendants was not the kind of force that they were employed to perform; thus, he alleges that they were acting outside their employment. Troopers Hibson and McDermott are not entitled to sovereign immunity at this stage of the case and the Motion to Dismiss Mr. Garcia's state law assault and

---

[7] Under 42 Pa. C.S.A. § 8522(b), the defense of sovereign immunity shall not be raised to claims for damages caused by: (1) Vehicle liability; (2) Medical-professional liability; (3) Care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) Potholes and other dangerous conditions; (6) Care, custody or control of animals; (7) Liquor store sales; (8) National Guard activities; and (9) Toxoids and vaccines. See 42 Pa.C.S.A. § 8522(b).

battery claims (Count IV) based on sovereign immunity is denied.

## IV.     CONCLUSION.

For all of the foregoing reasons, Count I of the Complaint is dismissed as to the Pennsylvania State Police and Troopers Hibson and McDermott in their Official Capacities. Counts II and III of the Complaint are entirely dismissed, and Count IV is dismissed against Troopers Hibson and McDermott in their Official Capacities.  The remaining claims are Count I - Section 1983 Excessive Force against Troopers Hibson and McDermott in their Individual Capacities and Count IV - Assault and Battery against Troopers Hibson and McDermott in their Individual Capacities.

An appropriate Order follows.